**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Case No. 26-cv-03948-NYW

JULIO CESAR LIMON SOTO,

Petitioner,

v.

GEORGE VALDEZ, in his official capacity,
JUAN BALTAZAR, in his official capacity,
MARKWAYNE MULLIN, in his official capacity, and
TODD BLANCHE, in his official capacity,

Respondents.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on the Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"). [Doc. 1], Respondents filed a consolidated response, [Doc. 5], and Petitioner has replied, [Doc. 7]. For the reasons set forth in this Order, the Petition is respectfully **GRANTED in part**.

## BACKGROUND

Petitioner Julio Cesar Limon Soto ("Petitioner" or "Mr. Limon Soto") is a native and citizen of Mexico. [Doc. 1 at ¶ 27]. He asserts no lawful basis for his presence in the United States. *See generally* [Doc. 1]. On July 25, 2026, Mr. Limon Soto, his partner Ms. Martinez,[1] and their two children were driving in Cheyenne, Wyoming when their car was stopped by deputies from the Laramie County Sheriff's Office ("LCSO"). [*Id.* at ¶¶ 1–2].

[1] The Petition does not specify Ms. Martinez's first name.

The stop began at 8:21 p.m. [*Id.* at ¶ 2]. Ms. Martinez was driving; Mr. Limon Soto was in the passenger seat. [*Id.* at ¶ 3]. Two deputies were initially present for the stop. [*Id.*]. One deputy, Deputy Bartlett, approached the driver's side, told Ms. Martinez she had been pulled over for a defective taillight, and asked her for her license and registration. [*Id.*]. She did not have her wallet but provided identifying information confirming that she had a valid Wyoming driver's license and was the registered owner of the car. [*Id.*].

The other deputy, Deputy Mershon, approached the passenger's side at approximately the same time and requested identification from Mr. Limon Soto. [*Id.* at ¶ 4]. Mr. Limon Soto provided a valid Mexican identification card. [*Id.* at ¶ 5]. Deputy Mershon returned to the patrol vehicle and handed Mr. Limon Soto's ID to Deputy Bartlett. [*Id.* at ¶ 6]. Deputy Bartlett radioed a third deputy, Deputy Veldheer, to come to the stop. [*Id.*]. Deputies Mershon and Veldheer are both authorized to perform federal immigration enforcement functions through an agreement under § 287(g) of the Immigration and Nationality Act ("INA"). [*Id.* at ¶ 13]; *see* 8 U.S.C. § 1357(g)(1). Deputy Mershon searched for Mr. Limon Soto in an immigration "identification app" but found no information. [Doc. at ¶¶ 6–7, 10]. He ordered Mr. Limon Soto out of Ms. Martinez's car and questioned him about his immigration status. [*Id.* at ¶¶ 8–9]. When Deputy Mershon asked whether he had any other identification, Mr. Limon Soto said it was at home. [*Id.* at ¶ 9]. Deputy Mershon continued to question Mr. Limon Soto about his presence in the country but obtained no further information—neither was fluent in the other's language and Mr. Limon Soto stated that he did not understand the questions. [*Id.*].

By 8:30 p.m., Deputy Bartlett had completed the traffic stop as to Ms. Martinez. [*Id.* at ¶ 11]. But the deputies kept Mr. Limon Soto outside the vehicle. [*Id.*]. Deputy

Veldheer arrived by 8:33 p.m. and questioned Mr. Limon Soto in improved, though still non-fluent, Spanish. [*Id.* at ¶ 12]. Mr. Limon Soto admitted that he was born in Mexico, but the deputies obtained no other information about whether Mr. Limon Soto was unlawfully present in the United States. [*Id.* at ¶ 14]. At 8:43 p.m., Deputy Veldheer contacted a supervisory officer with U.S. Immigration and Customs Enforcement ("ICE"), who authorized Mr. Limon Soto's arrest. [*Id.* at ¶ 45]. Deputy Veldheer promptly arrested Mr. Limon Soto. [*Id.*]. There is no record that any deputy or ICE officer believed that Mr. Limon Soto was a flight risk. [*Id.* at ¶ 19].

The Petition—which is verified by counsel—alleges that no administrative arrest warrant ("Form I-200" or "warrant") had issued at the time ICE authorized Mr. Limon Soto's arrest. [Doc. 1 at ¶ 16]. Nonetheless, the Form I-200 for Mr. Limon Soto is dated July 25, 2026, the day of his arrest. [Doc. 1-2]. It contains no time stamp. The Form I-200 identifies three bases for Mr. Limon Soto's arrest: (1) a charging document initiating removal proceedings; (2) biometric confirmation or federal records indicating Mr. Limon Soto's removability; and (3) voluntary statements or other reliable evidence indicating removability. [*Id.*]. A Notice to Appear for removal proceedings ("NTA") was issued to Mr. Limon Soto, but the NTA is dated July 26, 2026—the day after his arrest. [Doc. 1-3].

Mr. Limon Soto remains in detention at an ICE facility in this District. [*Id.* at ¶ 23]. He has not received a bond hearing or other individualized custody determination. [*Id.* at ¶ 21].

In the Petition, Mr. Limon Soto brings four claims challenging his detention. First, he argues that the LCSO deputies lacked reasonable suspicion to prolong the traffic stop in order to investigate his immigration status, violating the Fourth Amendment and 8

C.F.R. § 287.8(b)(2) ("Claim One"). [Doc. 1 at ¶¶ 42–53]. Second, he argues that his allegedly warrantless arrest and subsequent detention violate 8 U.S.C. §§ 1226(a) and 1357(a)(2) and 8 C.F.R. §§ 236.1(b), 287.3(d), and 287.8(c)(2)(ii) ("Claim Two"). [Doc. 1 at ¶¶ 54–67]. Third, he asserts that Respondents' failure to provide an individualized custody determination violates his due process rights under the Fifth Amendment ("Claim Three"). [Doc. 1 at ¶¶ 68–79].

This matter is fully briefed and ripe for disposition. No Party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary. *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature").

## LEGAL STANDARD

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## ANALYSIS

The Court's analysis begins and ends with Claims Two and Three. Both of these claims depend on Petitioner's assertion that he is detained under 8 U.S.C. § 1226(a) and

therefore entitled to its procedural protections. *See* [Doc. 1 at ¶¶ 54–79]. Respondents do not dispute this point and concede that they "are not submitting a brief in opposition to the Petition." [Doc. 27 at 1–2]. Indeed, the Tenth Circuit recently held "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026). The Court therefore agrees with Petitioner that his detention is governed by § 1226(a). The Court addresses Claims Two and Three in turn.

## I. Claim Two: Unlawful Warrantless Arrest and Continued Detention

In Claim Two, Petitioner asserts that his arrest and continued detention violate § 1226(a), § 1357(a), and applicable regulations. *See* [Doc. 1 at ¶¶ 54–67].

Section § 1226(a) authorizes arrest and detention only "[o]n a warrant issued by the Attorney General." § 1226(a)(2)(A). Thus, "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025); *accord, e.g.*, *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025); *Ahmed M. v. Bondi*, No. 25-cv-04711-ECT-SGE, 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026). "If the alien [detained under § 1226(a)] has not been arrested on a warrant, then the subsequent provisions giving the Attorney General discretion to detain or release 'the arrested alien' are likewise not triggered." *Florida v. United States*, 660 F. Supp. 3d 1239, 1276 (N.D. Fla. 2023); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) ("[Section 1226(a)] authorizes detention only '[o]n a warrant issued' by

the Attorney General leading to the alien's arrest."); *Quezada-Estrada v. Lyons*, No. 26-cv-01599-NYW, 2026 WL 1361880 (D. Colo. May 15, 2026), at *5 ("Fundamentally, Respondents may not detain first, and justify later." (collecting cases)).

This is consistent with Department of Homeland Security regulations permitting immigration officers to "arrest[] and take[] into custody" individuals suspected of violating the immigration laws *after* the officers have obtained a warrant and an NTA. *See* 8 C.F.R. §§ 236.1(b), 1236.1(b); *see also Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1216 (D. Colo. 2025) (observing that ICE officers "possess extremely broad authority" to arrest individuals subject to removal proceedings once a warrant and NTA have issued), *appeal docketed sub nom.*, *Ramirez Ovando v. Mullin*, No. 26-1027 (10th Cir. Jan. 26, 2026). Importantly, the warrant must be issued "[a]t the time of issuance of the notice to appear, or at any time thereafter" until removal proceedings have completed. 8 C.F.R. § 236.1(b)(1). So "the arrest warrant cannot precede the notice to appear." *Landaverde Ardon v. Mina*, No. 6:26-cv-313-JSS-LHP, 2026 WL 530199, at *3 (M.D. Fla. Feb. 26, 2026); *accord, e.g.*, *Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927 (S.D. Iowa 2026); *Martinez-Salamanca v. Baltazar*, No. 26-cv-02410-PAB, 2026 WL 2083209, at *3 (D. Colo. July 20, 2026).

Without a valid warrant, the Government's authority to make immigration arrests is "more limited." *Ramirez Ovando*, 810 F. Supp. 3d at 1216 (quoting *Arizona v. United States*, 567 U.S. 387, 408 (2012)). An immigration officer may make a warrantless arrest "if he has reason to believe" that a noncitizen is unlawfully present in the United States "and is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2). Courts have interpreted the "reason to believe" language as equivalent to the constitutional

probable cause standard and requiring a particularized finding of probable cause that the noncitizen is likely to escape. *See Ramirez Ovando*, 810 F. Supp. 3d at 1216–17 (citing *Roa-Rodriguez v. United States*, 410 F.2d 1206, 1209 (10th Cir. 1969)) (further citations omitted); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 30–31 (D.D.C. 2025).[2]

The record before the Court demonstrates that the Government did not comply with these requirements when arresting and detaining Petitioner. Petitioner's warrant indicates that it was issued the day before his NTA issued.[3] *See* [Doc. 1-2; Doc. 1-3]. The warrant is therefore invalid and provides no basis for arrest and detention under § 1226(a). *See Martinez-Salamanca*, 2026 WL 2083209, at *3; *Gopie v. Lyons*, No. 25-cv-05229-SJB, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (concluding that warrant issued three days before NTA could not authorize arrest and detention under § 1226(a)). Nor is there any indication that the LCSO deputies or ICE officers made a probable cause determination before arresting Mr. Limon Soto. Respondents make no effort to defend the validity of the warrant or justify a warrantless arrest. *See* [Doc. 5]. By failing to address either issue, they have forfeited any arguments in opposition. *Quezada-Estrada*, 2026 WL 1361880, at *6 (citing *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with legal authority or

---

[2] In the context of pretrial detention under the Bail Reform Act, the Tenth Circuit has observed that a defendant cannot be detained based on a risk of flight due solely to their status as a removable non-citizen. *See United States v. Sanchez-Rivas*, 752 F. App'x 601, 604 (10th Cir. 2018) (citing *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017)). This is equally applicable in this context, because otherwise, the two requirements of 8 U.S.C. § 1357(a)(2) would collapse into one.

[3] Petitioner suggests that the warrant was issued after his arrest and backdated to July 25, 2026. [Doc. 1 at ¶¶ 57, 63]. Because the warrant is invalid even if it does list the correct date of issuance, the Court need not reach this argument.

argument." (quotation omitted))). The Court respectfully concludes that Petitioner's warrantless arrest and detention violates § 1226(a).

## II. Claim Three: Detention Without a Bond Hearing

Habeas relief is further warranted based on Claim Three. In that claim, Petitioner contends that Respondents violated his due process rights by detaining him without a bond hearing or individualized custody determination. [Doc. 1 at ¶¶ 68–79]. As this Court has held, and as *Santillan Quiroz* confirms, detention without a bond hearing or individualized custody determination violates § 1226(a). *See, e.g.*, *Martinez Escobar v. Baltazar*, No. 26-cv-00296-NYW , 2026 WL 503313, at *3 (D. Colo. Feb. 24, 2026); *see also Santillan Quiroz*, 2026 WL 1876709 at *17 n.13 ("Because Santillan Quiroz can properly be subject to detention under § 1226(a), though, the district court shall order the Government to, within seven days of such order, either provide him with a bond hearing or else release him."). Respondents do not dispute that Petitioner has not received a bond hearing. *See* [Doc. 5].

In addition to violating § 1226(a), Petitioner's detention without an individualized custody determination violates his due process rights. At a minimum, the process due to a noncitizen detained under § 1226(a) "is that which is afforded under [§ 1226(a)]." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025), aff'd, 175 F.4th 713 (6th Cir. 2026). As explained, that process is an individualized bond determination. *See Santillan Quiroz*, 180 F.4th at 1251 n.13; *see also, e.g.*, *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) (describing the process owed under § 1226 as "an individualized bond hearing before an [immigration judge]"); *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) ("[Section] 1226(a) requires an individualized

bond determination."). The Court thus concurs with the numerous other district courts that have held that denying a bond hearing to a noncitizen detained under § 1226(a) violates the noncitizen's due process rights. *See, e.g.*, *Garcia Cortes*, 2025 WL 2652880, at *4; *Lopez-Campos*, 797 F. Supp. 3d at 784-85; *Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1158 (D. Colo. 2026).

**III. Appropriate Remedy**

Petitioner argues that the appropriate remedy is release, not a bond hearing. [Doc. 7 at 5]. The Court agrees.

This Court has explained that "[r]elease is an appropriate habeas remedy where a petitioner's current detention lacks a 'lawful predicate.'" *Quezada-Estrada*, 2026 WL 1361880, at *6 (quoting *Ahmed M.*, 2026 WL 25627, at *3). Numerous other courts have likewise held that release is appropriate where a petitioner was arrested without a valid warrant and without probable cause for a warrantless arrest. *See, e.g.*, *Arrioja Blanco v. Valdez*, No. 26-cv-03312-PAB, 2026 WL 2267337, at *2 (D. Colo. Aug. 6, 2026) (collecting cases); *Martinez-Salamanca*, 2026 WL 2083209, at *4; *Landaverde Ardon*, 2026 WL 530199, at *3; *Gopie*, 2025 WL 3167130, at *4. Indeed, release is the "typical remedy" for "unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

Accordingly, the Petition is respectfully **GRANTED** as to Claims Two and Three. Within **48 hours** of this Order, Respondents **SHALL RELEASE** Petitioner and return any personal property that was confiscated upon his arrest. No later than **September 17, 2026**, the Parties shall file a Joint Status Report confirming that Petitioner was released with any personal property. Having granted the requested relief as to Claims Two and Three, the Court need not reach Claim One.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) The Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1] is **GRANTED** as to Claims Two and Three;

(2) Within **48 hours** of this Order, Respondents **SHALL RELEASE** Petitioner from custody along with his personal property; and

(3) No later than **September 17, 2026,** the Parties shall file a Joint Status Report confirming that Petitioner was released and that any personal property was returned.

DATED: September 10, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge